**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAVONDA JONES, <br> *Parent and Next Friend of D.T., a minor*, <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action No. 15-cv-155 (BAH) <br> Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

Having prevailed before an administrative agency on her claim under the Individuals with Disabilities in Education Act and Individuals with Disabilities in Education Improvement Act (collectively, the "IDEA"), 20 U.S.C. § 1400, *et seq.*, and again prevailed in this Court by demonstrating her entitlement to payment of $45,272.77 in attorneys' fees and costs, the plaintiff Lavonda Jones, who is suing on behalf of herself and her minor child, now seeks an additional $10,468.50 in fees and costs incurred in litigating her first successful fees motion ("fees-on-fees"). Pl.'s Mot. Fees & Costs ("Pl.'s Mot."), ECF No. 21.

The defendant District of Columbia, after objecting to only eleven minutes of more than 130 hours billed by the plaintiff's counsel in pursuing her successful administrative action, now insists that the plaintiff may not be reimbursed for attorneys' fees incurred in defeating this objection. According to the District, the plaintiff is not entitled to any further payment of attorneys' fees stemming from her first successful fee application because she has failed to produce sufficient additional evidence "supporting the reasonableness of the rate [she] request[s]." Def.'s Opp'n Pl.'s Mot. Award Fees & Costs ("Def.'s Opp'n") at 3, ECF No. 22.

1

Thus, nearly two years after the plaintiff initiated her administrative action, more than a year after she prevailed in all her substantive IDEA claims, and almost three months after prevailing on her claim to attorneys' fees and costs, the District invites the Court to prolong this matter further by requiring the plaintiff to demonstrate anew that the fees she requests are compensable under the IDEA and to establish a separate fee rate for fees-on-fees.  The Court declines this invitation, and for the reasons outlined below, the plaintiff's motion for fees-on-fees is granted.

## I.      BACKGROUND

The plaintiff brought the first of two administrative complaints alleging that the District denied her disabled child a free and appropriate public education, in violation of the IDEA, on January 30, 2014.  *Jones v. District of Columbia*, No. 15-cv-155 (BAH), 2015 WL 5093559, at *3 (D.D.C. Aug. 18, 2015).  On August 5, 2014, following a three-day evidentiary hearing in June 2014, the plaintiff prevailed on all counts in her administrative action, successfully obtaining both an independent assessment of her child's disability and a reevaluation of the child's educational needs, as well as more than seventy hours of compensatory education in the form of one-on-one tutoring for her child.  *Id.*

Having prevailed in her administrative action, the plaintiff filed this action on January 30, 2015, to assert her statutory right as a prevailing parent under the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(I), to seek an award of reasonable attorneys' fees and costs.  *Jones*, 2015 WL 5093559, at *4; Compl., ECF No. 1.  Following referral, a Magistrate Judge on this Court issued a Report and Recommendation ("R&R") recommending that the plaintiff be awarded $45,272.77 in attorneys' fees and costs—all of her requested relief.  *Jones*, 2015 WL 5093559, at *1, *7. The plaintiff voluntarily chose to request attorneys' fees at the rate of $345 per hour, which is three-

quarters of the rate applicable to her attorney on the U.S. Attorney's Office Laffey Matrix

("USAO *Laffey* Matrix")[1], *id.* at *5, after indicating that this rate was counsel's normal billing

rate for work performed during the period when services were rendered to the plaintiff, *see* Decl.

of Domiento C.R. Hill, ¶¶ 15–16, ECF No. 10-14.  The District did not challenge the hourly rate

proffered as reasonable by the plaintiff but instead ultimately disputed, unsuccessfully, only two

of dozens of billing entries submitted by the plaintiff's attorney in connection with her successful

administrative action.  *Jones*, 2015 WL 5093559, at *6.

     After neither party filed a timely objection, this Court adopted the R&R in full on August

18, 2015.  *See id.* at *1.  Having prevailed in her action to obtain attorneys' fees arising from the

administrative proceedings, the plaintiff has now moved, pursuant to Federal Rule of Civil

Procedure 54(d)(2)(B), to obtain reimbursement of $10,468.50 of attorneys' fees and costs

incurred in litigating in federal court her successful petition for fees and costs.  *See* Pl.'s Mot. at

1.

## II.   LEGAL STANDARD

     The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees

. . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C.

§ 1415(i)(3)(B)(i).  This statutory language makes plain that a prevailing party in an IDEA action

may seek the award of attorneys' fees that are "reasonable."  *Id.*  The D.C. Circuit has developed

---

[1]     Established in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 756 F.2d 4 (D.C. Cir. 1984), the *Laffey* Matrix recommends a presumptive maximum hourly rate for "complex federal litigation," *id.* at 372.  In the years since it was initially proposed, the *Laffey* Matrix has spawned two versions: (1) a version maintained by the U.S. Attorney's Office for the District of Columbia, which is linked to inflation, as measured by the Consumer Price Index for all items in the Washington, DC area; and (2) an "enhanced" version (also referred to as the "Adjusted *Laffey* Matrix," *see e.g.*, *Baker v. D.C. Pub. Sch.*, 823 F. Supp. 2d 1, 9 (D.D.C. 2011)), which is adjusted for inflation using the more rapidly rising Legal Services Index ("LSI") of the nationwide Consumer Price Index.  *See Eley*, 793 F.3d at 101–02.  The plaintiff's requested rate derives from the U.S. Attorney's Office version of the *Laffey* Matrix.

a "three-part" analysis for assessing whether a requested fee award is reasonable under federal statutes authorizing fee-shifting. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015). "First, the court must determine the number of hours reasonably expended in litigation. Second, it must set the reasonable hourly rate. Finally, it must determine whether use of a multiplier is warranted." *Id.* (internal citations and quotations omitted).[2] With regard to the proposed hourly rate, the Court considers three sub-elements: "(1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.' *Id.* (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995)).

The availability of reasonable attorneys' fees applies to fees incurred in IDEA litigation both before administrative agencies and in federal court, as well as to fees incurred to vindicate a plaintiff's right to fees. Thus, the D.C. Circuit held in *Kaseman v. District of Columbia* that "parties who prevail at the administrative level can also recover fees-on-fees, as [the D.C. Circuit's] general rule is that the court may award additional fees for 'time reasonably devoted to obtaining attorney's fees.'" 444 F.3d 637, 640 (D.C. Cir. 2006) (quoting *Envtl. Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir. 1982)). In broadly allowing successful plaintiffs to obtain fees-on-fees, the D.C. Circuit has emphasized that the availability of such awards "is *essential* to carrying out Congress' goal in including [fee-shifting] provision[s] in the first place." *Am. Fed'n of Gov't Emps., AFL–CIO, Local 3882 v. Fed. Labor Relations Auth.*, 994 F.2d 20, 22 (D.C. Cir.

---

[2]     Here, because the IDEA prohibits application of any bonus or multiplier, *Eley*, 793 F.3d at 100 (citing 20 U.S.C. § 1415(i)(3)(C)), only the first and second elements of this analysis are considered in the discussion that follows.

1993) (emphasis added).  In this way, "such fees are often necessary to fulfill the purposes of the statutory scheme on which the action is based." *Id.*

In general, "[t]he 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates' and the opposing party remains 'free to rebut a fee claim.'"  *Id.* (quoting *Covington*, 57 F.3d at 1107–08).  Once an applicant meets this initial burden, a presumption applies that the number of hours billed and the hourly rates are reasonable.  *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010)).  At that point, the burden shifts to the opposing party to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

While the IDEA authorizes the court to award reasonable attorneys' fees "in its discretion," 20 U.S.C. § 1415(i)(3)(B)(i), the D.C. Circuit has observed, "notwithstanding the apparently permissive language of the statute, the Supreme Court has interpreted similar language in other fee-shifting contexts to mean that the prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Price v. District of Columbia*, 792 F.3d 112, 114–15 (D.C. Cir. 2015) (citing authorities).  A district court's award of attorneys' fees is reviewed for an abuse of discretion.  *Eley*, 793 F.3d at 103 (citing *King v. Palmer*, 950 F.2d 771, 785 (D.C. Cir. 1991) (en banc)), and the D.C. Circuit will not upset such an award "'absent clear misapplication of legal principles, arbitrary fact

finding, or unprincipled disregard for the record evidence,'" *id.* (quoting *Kattan ex rel. Thomas v. District. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)).

## III.   DISCUSSION

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); *see also Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000). Unfortunately, however, the District's historical failure to fulfill its obligations under the IDEA is well documented. As described by the D.C. Circuit, by the late 1990s, the District's persistent failure to meet its IDEA obligations "reached crisis proportions," such that the District "had virtually ceased to conduct timely hearings requested by parents under IDEA and to issue final decisions within the required timelines." *Calloway*, 216 F.3d at 3. To address these and other failures, the District and the Department of Education entered into a Compliance Agreement mandating that the District come into full compliance with the requirements of IDEA by no later than July 2001. *Id.* at 4 (citing Office of Special Education and Rehabilitative Services; Assistance to States for the Education of Individuals with Disabilities, 63 Fed. Reg. 41370, 41371).

More recently, those parents who *do* succeed in pursuing administrative IDEA claims against the District, and who are therefore entitled to seek reimbursement for reasonable attorneys' fees incurred in pursuing their claims, have encountered substantial difficulties in obtaining such reimbursement. For example, as this Court recently observed, the District's failure to pay requested, and indeed court-ordered, reimbursement of attorneys' fees to prevailing

parents has been sufficiently troubling as to raise questions about whether the District is hampering the ability of parents to retain competent counsel in the area of IDEA litigation. *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 245 (D.D.C. 2012) (noting evidence that the District had failed to comply with thirteen of twenty-one court orders issued in the preceding year directing the payment of attorneys' fees, describing the experiences of local IDEA practitioners who, due to such delays, were forced to significantly reduce litigation staff, and noting that the "largest firm in the District whose practice is solely special education" lost half of its 800 clients after the District stopped processing or paying all invoices submitted by the firm between February 2012 and December 2012.  This pattern of non-payment was "not only troubling but relevant to the [reasonable] fee inquiry . . . because the District's consistently dismal track record compels the conclusion that higher fees may need to be awarded in [IDEA] cases in order to ensure that competent counsel continues to be attracted to [IDEA] litigation." *Id.* at 246 (recognizing the "well-established principle that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case" (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

As discussed in more detail below, while the District is, of course, entitled to contest a requested fee award, the case at hand presents an apt illustration of the District's practice of asserting arguments that, if accepted, would increase the burden to recover reimbursement of attorneys' fees under the IDEA and prolong this phase of the litigation in federal court, with the concomitant result of delaying reimbursement of attorneys' fees and costs.

The plaintiff's present request for $10,468.50 in attorneys' fees reflect all of the fees accrued in litigating the plaintiff's fee petition in federal court, including: (1) $9,993.50 for

attorney's fees, representing 43.30 hours of attorney time billed at $230.00 per hour,[3] or half of

the hourly rate applicable to a lawyer, such as plaintiff's counsel, with fifteen years of

experience, under the USAO *Laffey* Matrix; and (2) $475.00 in filing and service costs.   Mem.

Supp. Pl.'s Mot. Fees & Costs (Pl.'s Mem.) at 4–5, ECF No. 21-1.  In opposing this motion, the

District does not contest that the plaintiff prevailed both in seeking accommodations for her child

under the IDEA and in her subsequent effort before this Court to recover attorneys' fees

stemming from her successful administrative case.  Nor does the District contest the number of

hours spent by plaintiff's counsel in successfully litigating the fee petition in federal court.

Instead, the District argues that the plaintiff has failed to put forward sufficient *additional*

evidence to demonstrate that her counsel's fees associated with the successful fee application

were reasonable and urges the Court to deny reimbursement of all or some of these outstanding

fees.[4]  Thus, more than a year after the District's defense of the plaintiff's administrative

complaint was rejected, and months after the District again failed in its subsequent effort before

this Court to challenge a negligible portion of the fees incurred during the administrative

proceeding, the District now contends that the plaintiff bears anew the full burden of

demonstrating the reasonableness of the hourly rate requested for reimbursement of the fees

incurred in this federal litigation.

Specifically, the District contends that the plaintiff's request for outstanding attorneys'

fees is unreasonable for two primary reasons.  First, the District argues that fees incurred in

preparing the instant motion for reimbursement of the costs of litigating in federal court are "not

---

[3]        The plaintiff seems to have miscalculated this total.  In fact, total fees for 43.30 hours charged at $230.00
per hour equates to $9,959.00.
[4]        The District does not contest the award of $475.00 in additional filing and service costs sought by the
plaintiff.  Def.'s Opp'n at 4.

reasonably related to the administrative action" and are therefore not compensable under the IDEA fee-shifting provision. Def.'s Opp'n at 1. Second, the District argues that the hourly rate proposed by the plaintiff at half the USAO *Laffey* Matrix rate for this fees-on-fees request, is unreasonable. *Id.* at 2–5. Each of these objections is addressed *seriatim* below.

## A.    The Plaintiff is Entitled to Reasonable Fees Incurred in Her Successful Litigation Before This Court

The District concedes that the plaintiff may recover reasonable fees-on-fees stemming from her IDEA claim, *id.* at 2, and does not contest the number of hours (35.8 hours) reasonably expended in litigating the plaintiff's successful application for the costs and fees associated with her underlying administrative proceeding, or even the number of hours (7.5 hours) spent on the instant motion for reimbursement of those fees. Nonetheless, the District objects to reimbursing the plaintiff for the 7.5 hours billed to prepare the plaintiff's instant motion to obtain fees-on-fees. Def.'s Opp'n at 5. Citing no binding authority, the District suggests that these most recent charges (which the District attempts to characterize as "fees-on-fees-on-fees") are "too attenuated from the underlying [IDEA] action" to be compensable under the IDEA. *Id.*

At the outset, the District's attempt to distinguish fees associated with the instant motion from fees previously incurred in this litigation cannot be squared with the D.C. Circuit's frequent admonishments regarding the crucial importance of federal fee-shifting provisions. First, as previously noted, the D.C. Circuit has consistently recognized the "essential" role that fees-on-fees play in carrying out the goals of statutory fee-shifting provisions. *Am. Fed'n of Gov't Emps.*, 994 F.2d at 22 (D.C. Cir. 1993); *see also Kaseman*, 444 F.3d at 640. Thus, in light of the significant interest in fully reimbursing successful civil rights plaintiffs, the D.C. Circuit has adopted the "general rule" that courts "may award additional fees for 'time reasonably devoted to

obtaining attorney's fees.'"  *Kaseman*, 444 F.3d at 640 (quoting *Envtl. Def. Fund*, 672 F.2d at 62).  This general rule draws no distinction between fees incurred through an initial fee petition and later charges reasonably required to obtain reimbursement for those fees.  Indeed, as this Court has emphasized, "once the defendant chose to fight the awarding of [less than one percent of the plaintiff's requested] attorneys' fees, it made those attorneys' fees an issue in the case." *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 164 (D.D.C. 2013), *rev'd on other grounds*, 793 F.3d 97 (D.C. Cir. 2015).  The District having done so, the plaintiff "should be entitled to receive just attorneys' fees for time reasonably expended to resolve the matter in dispute if the court otherwise determines such fees to be appropriate." *Envtl. Def. Fund*, 672 F.2d at 62.

While the District is therefore correct that prevailing fee applicants are not entitled to reimbursement for fees *unreasonably* incurred in the preparation of fees-on-fees applications, the District invites the Court to go a step further.  In essence, the District suggests that its ill-fated challenge to the plaintiff's initial fee application *in itself* raised an insurmountable barrier to reimbursement for *any* subsequent efforts to receive reimbursement for attorney time spent litigating the plaintiff's first successful fee application.  This contention is plainly inconsistent with the presumption that attorneys' fees should be awarded to a prevailing party absent apparent injustice, *Price*, 792 F.3d at 114–15, and lacks any basis in the IDEA or this Court's binding precedent.

Indeed, while Judges on this Court have recognized the potential pitfalls of unnecessarily protracted fee litigation, *see Means v. District of Columbia*, 999 F. Supp. 2d 128, 137 n.7 (D.D.C. 2013); *Wright v. District of Columbia*, 883 F. Supp. 2d 132, 134 (D.D.C. 2012), courts have withheld reimbursement of attorneys' fees only where *the plaintiff* needlessly prolongs

litigation or her attorney's efforts otherwise provide little additional support for a proposed fee award, *see Briggs v. District of Columbia*, No. 14-cv-0002 (RC), 2015 WL 1811973, at *4 n.3 (D.D.C. Apr. 21, 2015) (disallowing fees incurred in the preparation of a three-and-a-half page reply brief in support of a fees-on-fees motion that was non-responsive to issues raised by the defendant); *Pub. Emps. Envtl. Responsibility v. U.S. Int'l Boundary & Water Comm'n*, 968 F. Supp. 2d 85, 88 (D.D.C. 2013) (limiting additional fees accrued in preparation of a reply brief prepared in support of a fees-on-fees motion to eight hours).

Here, by contrast, the plaintiff's instant motion was entirely necessary to obtain reimbursement for her attorneys' efforts in her successful fee request, and it is instead the *District* that has chosen to extend the present litigation. Indeed, as previously noted, the plaintiff's request for fees-on-fees stems directly from the District's perplexing decision to contest a minor element of the plaintiff's initial fee application to full resolution before this Court. *Jones*, 2015 WL 5093559, at *1 (noting that "with little more than the cost of the filing fee at stake, the District's decision to pursue this matter to resolution defie[d] easy explanation").

Far from unnecessarily prolonging litigation, the instant motion is reasonably calculated to preserve the plaintiff's efforts to vindicate her child's rights under the IDEA, as well as her statutory right to seek reimbursement for her counsel's efforts to that end. Moreover, though the District criticizes the plaintiff's incorporation of her previous filings in support of the instant motion, *see* Def.'s Opp'n at 4, the plaintiff appropriately sought to limit the accrual of any additional fees in preparing the instant fees-on-fees motion by avoiding redundant and unnecessary argumentation in support of her present request for fees-on-fees. Accordingly, the

plaintiff reasonably seeks reimbursement for 7.5 hours of attorney time devoted to the preparation of the instant motion.

### B.     The Plaintiff's Proposed Hourly Rate is Reasonable

As noted, the District has raised no dispute as to the number of hours reasonably expended in litigating the plaintiff's first successful fee application.  Thus, having determined that the plaintiff is entitled to reimbursement for fees incurred in preparing the instant motion, the Court now turns to the District's contention that the discounted hourly rate requested by the plaintiff is unreasonable.  In challenging the plaintiff's proposed rate, the District incorrectly suggests that the plaintiff, in her present motion, must reestablish for this phase of the litigation the reasonableness of the rate at which she seeks reimbursement for her attorneys' efforts.  Def.'s Opp'n at 3.  According to the District, the plaintiff has failed in her present motion to "establish that the hourly rate [requested by the plaintiff] is prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," *id.*, and consequently should be denied any fees-on-fees.  The Court disagrees that (1) the reasonableness of the attorneys' fee rate must be re-litigated and reestablished at each stage of IDEA litigation, and (2) the plaintiff's requested rate is unreasonable.

### 1.     *Re-Litigation of the Applicable Fee Rate at Each Stage of Litigation Would Produce the "Kafkaesque Judicial Nightmare" the Supreme Court Sought to Avoid*

As an initial matter, the District's suggestion that a successful fee applicant seeking fees-on-fees must demonstrate anew the reasonableness of her proposed rate for time expended in her successful fee application runs counter to both clear precedent and basic common sense.  Indeed, as the District acknowledges, this Court's "authority to award fees on fees is derived from [the

IDEA fee-shifting provision] and *the principle that the fees petition and the administrative action in an IDEA case are part of the same action.*"  Def.'s Opp'n at 3 (emphasis added). Likewise, though in a different context, the D.C. Circuit has observed that a follow-on IDEA fee application should be treated as "part of the same 'action' as the underlying educational dispute, despite being brought pursuant to an independent 'cause of action,'" such that "the parent's entitlement to fees arises out of the same controversy and depends entirely on the administrative hearing for its existence." *Kaseman*, 444 F.3d at 641–42 (considering the applicability of a statutory fee cap then imposed on the District under the IDEA).  Likewise, in prior IDEA fee litigation, the District has not contested "that a single amount should be applied to all compensable hours" stemming from such litigation.  *Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 124 (D.D.C. 2004).

In light of these authorities, the District's contention that the plaintiff must again demonstrate that her requested rate is reasonable in order to obtain fees-on-fees is plainly inconsistent with the notion that her initial fee application arises out of the same controversy as her substantive IDEA claim.  As discussed above, imposing such an additional burden likewise does little justice to the "essential" role of fees-on-fees in "carrying out Congress' goal in including fee-shifting provisions." *Am. Fed'n of Gov't Emps*, 994 F.2d at 22 (internal alterations omitted).

Moreover, the Supreme Court has long recognized that requiring successful fee applicants to demonstrate at each stage of litigation every predicate condition for obtaining sought-after fees raises the specter of needlessly protracted and increasingly absurd fee litigation. In *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 155 (1990), the Court considered the application of the

fee-shifting provisions of the Equal Access to Justice Act.  Under that statute, fees are available "to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not 'substantially justified.'"  *Id.*  Rejecting the government's argument that parties seeking fees-on-fees must demonstrate that the government's position in contesting an initial fee award was not itself "substantially justified," the Court explained that "requiring courts to make a separate finding of 'substantial justification' regarding the Government's opposition to fee requests would multiply litigation."  *See id.* at 163.  Warning of a "'Kafkaesque judicial nightmare' of infinite litigation to recover fees for the last round of litigation over fees," *id.* (quoting *Cinciarelli v. Reagan*, 729 F.2d 801, 810 (D.C. Cir. 1984)), the Court emphasized that federal fee-shifting statutes "favor[] treating a case as an inclusive whole, rather than as atomized line-items," *id.* at 161–62.  Finally, and just as importantly, the Court noted that erecting such redundant barriers to recovery of fees-on-fees presents the exact "financial deterrent that [fee-shifting statutes] aim[] to eliminate."  *Id.* at 164.

Lastly, to the extent that the District's proposal to further reduce the rate at which plaintiff will be reimbursed for fees-on-fees stems from a suggestion that the plaintiff's fee litigation was somehow less complex than her underlying administrative action, this argument is again foreclosed by clear Supreme Court precedent.  In *Perdue v. Kenny A. ex rel. Winn*, the Supreme Court recently reiterated that the purported complexity of a particular case generally may not serve as a basis for adjusting an otherwise reasonable fee award.  559 U.S. at 553. There, a successful civil rights plaintiff sought a fee enhancement above the calculated lodestar award based on his attorneys' "superior performance" and the results obtained in the underlying

litigation. *Id.* at 546.[5]  Rejecting the plaintiff's requested enhancement, the Court explained that

"'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable

attorney's fee.'" *Id.* at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,

478 U.S. 546, 566 (1986)).  In particular, and most importantly for the case at hand, the Court

reiterated that "the novelty and complexity of a case generally may not be used as a ground for [a

deviation from an otherwise applicable lodestar] because these factors 'presumably [are] fully

reflected in the number of billable hours recorded by counsel.'" *Perdue*, 559 U.S. at 553

(quoting *Blum v. Stenson,* 465 U.S. 886, 898 (1984)) (second bracket in original).

Recognizing the "strong presumption that the lodestar is sufficient," *id.* at 546, the Court

emphasized the fundamental value in relying on an "objective" lodestar calculation to "cabin[ ]

the discretion of trial judges, permit[ ] meaningful review, and produce[ ] reasonably predictable

results," *id.* at 551–52.  With this in mind, a party "seeking [a deviation from a lodestar figure]

must produce 'specific evidence' that supports the award." *Id.* at 553 (citing *Blum*, 465 U.S. at

899, 901).  "This requirement is essential if the lodestar method is to realize one of its chief

virtues, *i.e.*, providing a calculation that is objective and capable of being reviewed on appeal."

*Id.*  Absent a clear explanation for such a deviation, "adequate appellate review is not feasible,

and without such review, widely disparate awards may be made, and awards may be influenced

(or at least may appear to be influenced) by a judge's subjective opinion regarding particular

attorneys or the importance of the case." *Id.* at 558.

Here, the Court has identified—over no objection from the District—a reasonable hourly

rate associated with the plaintiff's counsel's efforts to obtain her child's statutorily guaranteed

---

[5] Although the instant case raises the question of when rate reductions should be applied, the reasoning in *Perdue* is
equally applicable to enhancements or reductions.

educational accommodations.  *See Jones*, 2015 WL 5093559, at *6.  Having done so, to the

extent that the District now contends that the plaintiff's follow-on fee application presented less

complexity than her initial administrative action, the Court must therefore presume that this

relative simplicity is "fully reflected in the number of billable hours recorded [the plaintiff's]

counsel."  *Perdue*, 559 U.S. at 553.[6]  In other words, any consideration of the relative complexity

of the present fees litigation as compared to the plaintiff's underlying administrative action is

already incorporated into the reasonableness of the number of hours spent in litigating her

request for fees before this Court.

## 2. *The Plaintiff's Voluntary Discount of the Hourly Rate Approved by this Court for his Fees-on-Fees Request is Reasonable*

The plaintiff has not requested reimbursement for fees-on-fees at three-quarters of the

USAO *Laffey* Matrix rate applied to his counsel's successful efforts in his underlying

administrative action.  Instead, in an effort to expedite payment and reduce litigation costs, the

plaintiff requests reimbursement for fees-on-fees at only *half* of the applicable USAO *Laffey*

Matrix rate.  As explained above, because the plaintiff's successful fee application was "part of

the same 'action' as the underlying educational dispute [for which reasonable fees have already

been awarded]," *Kaseman*, 444 F.3d at 641–42, the fee rate already approved by the Court

---

[6]        Another Judge on this Court has interpreted *Perdue* more narrowly, holding that the case "was concerned with courts' altering the 'lodestar' amount[, and its] holding therefore has no bearing on the determination of the prevailing hourly rate used in calculating that 'lodestar' figure."  *Reed v. District of Columbia*, No. 14-cv-1887 (JEB), 2015 WL 5692871, at *7 (D.D.C. Sept. 28, 2015).  Upon closer inspection, however, this would seem to be a distinction without a difference.  As noted, the lodestar figure is the product of two figures— the number of hours worked and the rate at which those hours are compensated.  Any alteration to the resulting product thus implies a corresponding alteration to one or both of these two figures.  In a case where—as here—the party contesting fees has not disputed the number of hours reasonably expended in litigation, any downward adjustment therefore must be characterized as a reduction to the *rate* at which these hours are compensated.  Thus, the District's proposed reduction in the rate at issue here runs counter to the *Perdue* Court's admonition that that the relative complexity of a matter is presumed to be reflected fully in the number of hours billed.

without objection from District may also be applied to calculate outstanding fees-on-fees.  As such, the plaintiff's present request for an even *lower* hourly rate for work undertaken before this Court carries a strong presumption of reasonableness.  Moreover, because the plaintiff's discounted rate falls squarely within the range deemed reasonable in IDEA litigation in this jurisdiction, the District's objection to this proposed rate must ultimately fail.[7]

The IDEA requires that awarded attorneys' fees be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," 20 U.S.C. § 1415(i)(3)(C), and the D.C. Circuit has observed that the burden is on the fee applicant to "'produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  *Eley*, 793 F.3d at 100 (quoting Blum, 465 U.S. at 895 n.11) (emphasis in original); *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award.").

---

[7]     Disputing a mere $115 of the more than $10,000 accrued by the plaintiff's counsel in litigating the plaintiff's first successful fee motion, the District further contends that the plaintiff should be reimbursed at a reduced rate for one hour of attorney time billed for "Transportation to and from meeting with the process server." Def.'s Opp'n at 5–6 (citing Pl.'s Mem., Ex. 1). The plaintiff requests that this hour be reimbursed at $230, which is half the USAO *Laffey* Matrix rate. Pl.'s Reply Def.'s Opp'n Award Attorney's Fees & Costs at 7, ECF No. 23. According to the District, however, the reasonable rate for attorney travel time in this Circuit is "half the ordinary hourly rate." *Id.* (citing *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 106 (D.D.C. 2014)). Here, then, the District contends that the applicable rate for this hour should be at most $86.25 (calculated as half of the District's proposed rate of $172.50 per hour). Def.'s Opp'n at 6. Thus, not content with the plaintiff's proposal to reduce her requested rate to 50% of the applicable *Laffey* rate, the District would have the Court halve the otherwise applicable rate twice over in compensating the plaintiff for this hour. While Judges on this Court have compensated attorney travel time "at no more than half the attorney's appropriate hourly rate," *Reed v. District of Columbia*, No. 14-cv-1887 (JEB), 2015 WL 5692871, at *12 (D.D.C. Sept. 28, 2015) (collecting cases), as explained above, the applicable rate approved by this Court in the plaintiff's initial fee request is $375. Half of this reasonable rate, and the appropriate rate at which travel time therefore should be reimbursed, is $187.50. To the extent the plaintiff requests reimbursement for an additional $42.50, that request is denied.

Here, the parties have previously agreed that the reasonable hourly rate applicable to the present litigation is $345, or three-quarters of the USAO *Laffey* Matrix rate available to an attorney with the plaintiff's level of experience and expertise.  Pl.'s Mem. at 4; *Jones*, 2015 WL 5093559, at *6.  In pursuing her present application for fees-on-fees, however, the plaintiff proposes to an hourly rate of only $230, representing a 50%, rather than a 25%, reduction from the USAO *Laffey* Matrix rate applicable to plaintiff's counsel.  Pl.'s Mem. at 4.  In support of this proffered rate, the plaintiff suggests that she has requested a lower rate in pursuing the present motion "in light of previous decisions by this Honorable Court . . . and in the interest of summary adjudication [of the present motion]."  *Id.* at 4–5.  In particular, the plaintiff cites three prior decisions by judges in this District to contend that her proposed rate is reasonable.  *See* Pl.'s Reply Def.'s Opp'n Award Attorney's Fees & Costs ("Pl.'s Reply") at 5, ECF No. 23 (citing *Means*, 999 F. Supp. 2d at 136, *Garvin v. District of Columbia*, 910 F. Supp. 2d 135, 138 (D.D.C. 2012), and *Smith v. District of Columbia*, No. 02-cv-0373, 2005 WL 914773, at *3 (D.D.C. Apr. 18, 2005)).

In response, the District observes that the plaintiff's suggested rate of $230 per hour is 75% of her counsel's "ordinary rate," Def.'s Opp'n at 1 (citing Pl.'s Mot. Summ. J. at 7–8), and argues the authorities cited by the plaintiff do not support the plaintiff's proposed rate but only one at 50% of that ordinary rate.  *See id.* at 4.  Contending that the plaintiff has therefore failed to carry her burden of demonstrating that her proposed fees-on-fees are reasonable, the District argues first that the plaintiff is entitled to no additional recovery.  *Id.*  Alternatively, instead of 50% of the USAO *Laffey* Matrix rate, the District suggests that the Court award no more than 50% of plaintiff's counsel's "ordinary rate."  *Id.* at 5 (suggesting that the District "is willing to

agree that $172.50 per hour is reasonable . . . only if the Court finds it inequitable to award no fee.").

The D.C. Circuit recently addressed the availability of attorneys' fees in general, and the applicability of the *Laffey* Matrix in particular, in IDEA litigation in *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015). In *Eley*, the Court noted that the *Laffey* Matrix, like other fee matrices, serves as a "'useful starting point' in calculating the prevailing market rate" for legal services. *Id.* at 100 (quoting *Covington*, 57 F.3d at 1109). Thus, the Court emphasized that a successful fee applicant may supplement such a matrix with other evidence, including, *inter alia*, "'surveys to update [the matrix]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by courts or through settlement to attorneys with comparable qualifications handling similar cases.'" *Id.* (quoting *Covington*, 57 F.3d at 1109). While the *Eley* majority expressly reserved judgment as to the applicability of either version of the *Laffey* Matrix to IDEA litigation, *id.* at 105, Judge Kavanaugh emphasized in a brief concurrence his view that the USAO *Laffey* Matrix "is appropriate for IDEA cases," *id.* at 105 (Kavanaugh, J., concurring).

The *Eley* majority noted that the District identified "over forty cases in which district courts had awarded attorneys' fees awards in IDEA cases based on prevailing market rates set at (or below) the USAO *Laffey* Matrix," *Eley*, 793 F.3d at 102, but closer scrutiny indicates a lack of unanimity among judges on this Court regarding the reasonable rate for attorneys' fees stemming from IDEA litigation, *see Young v. District of Columbia*, 893 F. Supp. 2d 125, 130 (D.D.C. 2012) ("In this court, there has not been a unified approach to the proper rates for attorneys' fees in IDEA cases, and there is authority that would support a range of approaches.").

19

For example, nearly half of the cases cited by the District in *Eley* were brought and litigated simultaneously and resolved by a single Magistrate Judge, who applied three-quarters of the USAO *Laffey* Matrix rate, in virtually identical opinions in 2012.[8]   In eight of the remaining cases, the plaintiff—like the plaintiff here—voluntarily *requested* a rate below the full USAO *Laffey* Matrix rate.[9]   Likewise, in one case, the court deviated from the full *Laffey* rate only upon finding specific deficiencies in the plaintiffs' fee application.   *See Rapu v. D.C. Pub. Sch.*, 793 F. Supp. 2d 419, 423–24 (D.D.C. 2011) (imposing a reduced USAO *Laffey* Matrix rate where the plaintiff failed entirely to offer "required information about [the] experience, skill, and reputation" of her counsel).   The remaining cases cited by the District in *Eley* were decided either by the same Magistrate Judge who decided the large bulk of cases described above, a second Magistrate Judge, or one of five District Judges on this Court.[10]

---

[8]      *See Davis v. District of Columbia*, 864 F. Supp. 2d 110 (D.D.C. 2012); *Flores v. District of Columbia*, 858 F. Supp. 2d 95 (D.D.C. 2012); *Flores v. District of Columbia*, 857 F. Supp. 2d 15 (D.D.C. 2012); *Huntley v. District of Columbia*, 860 F. Supp. 2d 53 (D.D.C. 2012); *Huntley v. District of Columbia*, 859 F. Supp. 2d 25 (D.D.C. 2012); *Jones v. District of Columbia*, 859 F. Supp. 2d 149 (D.D.C. 2012); *Petway v. District of Columbia*, 858 F. Supp. 2d 70 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86 (D.D.C. 2012); *Wallace v. District of Columbia*, 42 F. Supp. 3d 43 (D.D.C. 2012); *Wood v. District of Columbia*, 864 F. Supp. 2d 82 (D.D.C. 2012); *Young v. District of Columbia*, 869 F. Supp. 2d 1 (D.D.C. 2012); *Jones v. District of Columbia*, No. 11-cv-168 AK, 2012 WL 1664231 (D.D.C. May 11, 2012); *Scott v. District of Columbia*, No. 11-cv-165 AK, 2012 WL 1633207 (D.D.C. May 9, 2012); *Huntley v. District of Columbia*, No. 11-cv-157 AK, 2012 WL 1569553 (D.D.C. May 3, 2012); *Huntley v. District of Columbia,* No. 11-cv-164 AK, 2012 WL 1596724 (D.D.C. May 7, 2012); *Cousins v. District of Columbia*, No. 11-cv-172 AK, 2012 WL 1439033 (D.D.C. Apr. 26, 2012); *Crawford v. District of Columbia*, No. 11-cv-174 AK, 2012 WL 1438985 (D.D.C. Apr. 26, 2012)*; Gorman v. District of Columbia*, No. 11-cv-150 AK, 2012 WL 1438977 (D.D.C. Apr. 26, 2012).

[9]      *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 73–74 (D.D.C. 2012); *Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 75 (D.D.C. 2012); *Parks v. District of Columbia*, 895 F. Supp. 2d 124, 131–32 (D.D.C. 2012); *B.R. v. District of Columbia*, 802 F. Supp. 2d 153, 164 (D.D.C. 2011); *Gray v. District of Columbia*, 779 F. Supp. 2d 68, 73 (D.D.C. 2011); *Bridges Pub. Charter Sch. v. Barrie*, 796 F. Supp. 2d 39, 50; *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 75 (D.D.C. 2010); *Garvin v. District of Columbia*, 851 F. Supp. 2d 101, 107 (D.D.C. 2012); *Laster v. District of Columbia*, No. 05-cv-1875 (RMU), 2006 WL 2085394, at *3 (D.D.C. July 25, 2006); *Herbin v. District of Columbia*, No. 02-cv-1185 (RWR), 2006 WL 890673, at *4 (D.D.C. Apr. 4, 2006).

[10]      *See Carter v. District of Columbia*, 894 F. Supp. 2d 46, 53–54 (D.D.C. 2012) (Wilkins, J.); *Santamaria v. District of Columbia*, 875 F. Supp. 2d 12, 21 (D.D.C. 2012) (Contreras, J.); *McClam v. District of Columbia*, 808 F. Supp. 2d 184, 190 (D.D.C. 2011) (Collyer, J.); *Rooths v. District of Columbia*, 802 F. Supp. 2d 56 (D.D.C. 2011) (Friedman, J.); *Agapito v. District of Columbia*, 525 F. Supp. 2d 150, 155 (D.D.C. 2007) (Collyer, J.); *Moss v. District of Columbia*, No. 11-994 (JEB/JMF), 2012 WL 4510682, at *3 (D.D.C. July 12, 2012) (Facciola, M.J.); *Smith v. District of Columbia*, No. 02-cv-373 (AK), 2005 WL 914773 (D.D.C. Apr. 18, 2005), at *3 (Kay, M.J.);

By contrast, at least nine judges on this Court who have considered the issue have applied full USAO *Laffey* Matrix rates in recent IDEA fee litigation, consistent with the concurrence of Judge Kavanaugh in *Eley*.[11]  Consequently, given the lack of clear guidance provided by the D.C. Circuit in *Eley*, apart from Judge Kavanaugh's concurring opinion expressly endorsing full USAO *Laffey* Matrix rates for IDEA cases, there remains some uncertainty as to the applicability of either version of the *Laffey* Matrix to IDEA cases.[12]

In any event, the plaintiff here requests neither the full USAO *Laffey* Matrix rate applicable to her experienced attorney, nor the three-quarters of that rate approved by this Court in her first fee application.  *See* Pl.'s Mem. at 4–5.  Instead, citing an effort to resolve the instant

---

*Pullins-Graham v. District of Columbia,* No. 98-cv-3095 (CKK/AK) 2003 U.S. Dist. LEXIS 25796, at *12 (D.D.C. July 31, 2003) (Kay, M.J.); *cf. Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 124 (D.D.C. 2004) (Collyer, J.) (applying the full USAO *Laffey* Matrix rate after adjusting for the plaintiff's attorney's specific experience in special education law).

[11]     *See Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 237 (D.D.C. 2012) (Howell, J.); *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 48–49 (D.D.C. 2012) (Rothstein, J.); *Young*, 893 F. Supp. 2d at 131 (D.D.C. 2012) (Jackson, J.); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012) (Lamberth, J.); *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 75–76 (D.D.C. 2010) (Kessler, J.); *Jackson v. District of Columbia*, 696 F. Supp. 2d at 101–03 (Urbina, J.); *Brown v. Jordan P.C.S.*, 539 F. Supp. 2d 436, 437–38 (D.D.C. 2008) (Leon, J.); *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25–26 (D.D.C. 2004) (Huvelle, J.); *Coleman v. District of Columbia*, No. 03-cv-126 (HHK), 2007 WL 1307834, at *2–*4 (D.D.C. May 3, 2007) (Kennedy, J.).

[12]     Often citing the improved accuracy afforded by tying annual adjustments to changes in the cost of legal services, as opposed to changes in costs for unrelated goods and services, Judges in this District have also used the LSI-adjusted *Laffey* Matrix to calculate reasonable attorneys' fees in a variety of contexts.  *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 80 F. Supp. 3d 1, 3–4 (D.D.C. 2015) (utilizing the LSI-adjusted *Laffey* Matrix "as a starting point" for calculating reasonable attorneys' fee rates in a FOIA action, after concluding that the LSI-adjusted matrix "likely offers a better approximation of D.C. rates for the relevant services than a matrix adjusted using a general inflation index"); *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, No. 11-cv-1021, Mem. Op. (October 24, 2014) (same); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14–15 (D.D.C. 2000) (applying LSI-adjusted rates in a 42 U.S.C. § 1983 case after observing that "the [LSI-adjusted] Laffey index has the distinct advantage of capturing the more relevant data because it is based on the legal services component of the Consumer Price Index rather than the general CPI on which the U.S. Attorney's Office matrix is based"); *see also Salazar v. District of Columbia*, 750 F. Supp. 2d 70, 73 (D.D.C. 2011) (same, noting that "'[e]conomists use as specific an index as possible to determine changes in prices in a part of an industry' and therefore 'components of the Consumer Price Index are the better tool to use to update an industry's prices rather than the entire Consumer Price Index'"); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) (same, finding LSI-adjusted matrix use reasonable and noting that "[w]hile the [LSI-adjusted] Laffey matrix was, as of 2003, somewhat more generous to counsel than the USAO Matrix, it was also more accurate").

motion swiftly, the plaintiff proposes to reduce further her proposed rate in calculating any fees-on-fees award. *Id.* In addition to this proposed discount, the plaintiff relies on other fees-on-fees awards in this District to argue that her proffered rate of half the full *Laffey* rate is reasonable. Pl.'s Reply at 5 (citing *Wright*, 883 F. Supp. 2d at 135, *Garvin*, 910 F. Supp. 2d at 141, and *Smith*, 2005 WL 914773, at *3); *accord Means*, 999 F. Supp. 2d at 136 (adopting a 50% reduction from the attorney's full *Laffey* rate after noting that the defendant did not dispute that the proposed rate was reasonable). As the D.C. Circuit has recognized, *see Eley*, 793 F.3d at 104, such evidence of recent awards within this jurisdiction supports the plaintiff's contention that her requested rate is "'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation,'" *id.* (quoting *Covington*, 57 F.3d at 1109).

The District contends that two of the plaintiff's cited authorities do not support her proposed rate, but these objections are unavailing. Most significantly, the District correctly observes that the Court in *Means* adopted a 50% *Laffey* rate in approving a fees-on-fees request only after neither party disputed the reasonableness of that proposed rate. The District fails to mention, however, that the *District itself* was the defendant in *Means*. The District's failure to contest the reasonableness of the plaintiff's proposed rate less than two years prior to the instant action significantly undermines its present contention that this rate is unreasonably high.

Further, although the District is correct that the Court in *Smith* did not clearly consider proposed *Laffey* rates,[13] this superficial distinction is of little consequence. In *Smith*, the Court

---

[13]     The *Smith* Court did not indicate that the fee applicant's proposed rates derived from the *Laffey* Matrix, but expressed the view that the fee litigation at issue did not qualify as "complex federal litigation" within the meaning articulated by the D.C. Circuit in *Laffey*. *See Smith*, 2005 WL 914773, at *3 & n.8.

concluded that that the plaintiff's initial "fee litigation [was] not complex federal litigation and [did] not necessarily entail specialized expertise and experience," and therefore "adjusted downward" the applicable fees-on-fees hourly rate for the plaintiff's lead attorneys by roughly 22% and 17%, respectively, without explanation for how the Court arrived at these discounted rates. *Smith*, 2005 WL 914773, at *3 (reducing the applicable hourly rates from $320 to $250, and from $300 to $250). By comparison, here, the plaintiff's proposed fees-on-fees rate represents a discount of roughly 33% from the rate awarded without objection in her initial fees request. Pl.'s Mem. at 4 (suggesting a reduction from $345 per hour to $230 per hour). Indeed, the actual rate proposed by the plaintiff is less than that approved by the Court in *Smith*. Thus, contrary to the District's contention, *Smith* suggests that both the plaintiff's proposed discount, and the resulting fees-on-fees rate, are consistent with rates previously deemed reasonable in this District.

In sum, the plaintiff has demonstrated that her proposed fees-on-fees rate has been adjudged reasonable both by Judges on this Court, and—at least by implication—by the District itself in recent IDEA litigation. By comparison, the District offers no evidence to suggest that the plaintiff's proposed discounted rate is unreasonable, or that its alternate suggestion is itself reasonable, in light of the nature of the present dispute or this Court's case law. Accordingly, the Court concludes that plaintiff's proposed rate of $230 per hour represents reasonable compensation for her attorney's effort to litigate her successful fee application.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Fees and Costs, ECF No. 21, is granted. The plaintiff is entitled to reimbursement for 42.30 hours of attorney time at a rate of

$230 per hour, and $187.50 per hour for one hour of attorney time.  The plaintiff is further entitled to reimbursement for $475 in costs incurred in filing and serving her Complaint.  The plaintiff is thus entitled to reimbursement of a total of $10,391.50 in additional attorneys' fees and costs.

An appropriate Order accompanies this Memorandum Opinion.


Date: October 29, 2015


_____
BERYL A. HOWELL
United States District Judge